[Cite as *State v. Nelson*, 2018-Ohio-4763.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CHAMPAIGN COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2018-CA-5 |
| | : | |
| v. | : | Trial Court Case No. 2016-CR-134 |
| | : | |
| JOHN EDWARD NELSON | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 30th day of November, 2018.

. . . . . . . . . . .

JANE A. NAPIER, Atty. Reg. No. 0061426, Champaign County Prosecutor's Office, Appellate Division, 200 N. Main Street, Urbana, Ohio 43078
    Attorney for Plaintiff-Appellee

JAMES S. SWEENEY, Atty. Reg. No. 0086402, 97 S. Liberty Street, Powell, Ohio 43065
    Attorney for Defendant-Appellant

. . . . . . . . . . . .

DONOVAN, J.

{¶ 1} This matter is before the Court on the February 15, 2018 Notice of Appeal of John Edward Nelson. Nelson appeals from the trial court's January 22, 2018 judgment entry, issued after a community control violation hearing, which found that Nelson violated his community control sanctions and imposed an aggregate sentence of

34 months.   We hereby affirm the judgment of the trial court.

{¶ 2} On May 5, 2016, Nelson was indicted on two counts of forgery (Counts One and Two), felonies of the fifth degree; one count of possession of cocaine, a felony of the fifth degree (Count Three); one count of illegal use or possession of drug paraphernalia (Count Four), a misdemeanor of the fourth degree; one count of trafficking in cocaine (Count Five), a felony of the fourth degree; one count of aggravated trafficking in drugs (Count Six), a felony of the third degree; and two counts of corrupting another with drugs (Counts Seven and Eight), felonies of the fourth degree.

{¶ 3} On May 23, 2016, Nelson entered pleas of not guilty.   On July 14, 2016, Nelson withdrew his pleas of not guilty and pled guilty to trafficking in cocaine (Count Five), in violation of R.C. 2925.03(A)(1) and (C)(4)(b), and two counts of corrupting another with drugs (Counts Seven and Eight), in violation of R.C. 2925.02(A)(4)(a) and (C)(3).   Nelson also entered a guilty plea to Count Six, which was amended to attempted aggravated trafficking in drugs, in violation of R.C. 2923.02(A) and R.C. 2925.03(A)(1)(C)(1)(b), a felony of the fourth degree.

{¶ 4} On August 15, 2016, the court imposed a term of community control for a period of four years, including standard and special conditions.   Nelson's judgment entry of conviction provided in part:

REVOCATION OF COMMUNITY CONTROL

If Defendant violates Community Control and Community Control is revoked, the Court will impose the following terms of imprisonment upon the Defendant:

Count Five - Imprisonment of seventeen (17) months to the [ODRC][1]

Count Six - Imprisonment of seventeen (17) months to the [ODRC]

Count Seven - Imprisonment of seventeen (17) months to the [ODRC]

Count Eight - Imprisonment of seventeen (17) months to the [ODRC]

The sentences imposed in Counts Five and Six shall be served **CONCURRENTLY** to one another. The sentences imposed in Counts Seven and Eight shall be served **CONCURRENTLY** to one another. The sentences imposed in Counts Five and Six shall be served **CONSECUTIVELY** to the sentences imposed in Counts Seven and Eight making a **TOTAL SENTENCE OF THIRTY-FOUR (34) MONTHS**.

**{¶ 5}** On August 17, 2016, the court issued a "Journal Entry Attaching Community Control Conditions to the Journal Entry of Judgment, Conviction, and Sentence," which provided that the "Court hereby attaches the signed Standard and Special Conditions of Community Control Supervision to this Entry. The Court incorporates by reference the community control conditions and Defendant's acceptance thereto by reference as if fully rewritten into the Journal Entry of Judgment, Conviction and Sentence." One of the attached conditions required Nelson to "follow all orders given to me by my supervising officer or other authorized representatives of the Court or the Department of Rehabilitation and Correction."

**{¶ 6}** On January 2, 2018, the court scheduled an arraignment at the request of Nelson's probation officer. The following day, the court issued a "Notice of Supervision Violation," which provided:

---

[1] Ohio Department of Rehabilitation and Correction.

Now comes **Herbert Nicholson Jr.**, State Parole / Probation Officer, and says that the Defendant has violated community control supervision in the following manner:

1. Violation of Standard Condition of Supervision rule #1:   I will obey federal, state and local laws and ordinances, including those related to illegal drug use and registration with authorities.   To wit:

On or about 12/23/17, you did cause damage to property at 445 East Ward Street, Urbana, Ohio.

2. Violation of Standard Condition of Supervision rule #2:   I will follow all orders given to me by my supervising officer or other authorized representatives of the Court or the Department of Rehabilitation and Correction.   To wit:

Since on and after 12/1/17, you have had contact with [J.] Elliott in and around Champaign County, Ohio.

3. Violation of Standard Condition of Supervision rule #5:   I agree to conduct myself as [a] responsible, law abiding citizen.   To wit:

On or about 12/23/17, you acted in a disorderly manner in and around Champaign County, Ohio.

{¶ 7}  On January 9, 2018, the court filed an entry stating that Nelson "did not contest the existence of probable cause, and the Court found that probable cause existed to hold a Community Control Violation hearing."

{¶ 8}  At the start of the January 19, 2018 hearing, the prosecutor raised the following question with respect to revocation of Nelson's community control sanctions:

"does the Court believe that because the basis of the community control violations are [a] misdemeanor conviction and misdemeanor conduct[,] that the Court is only able to sentence the Defendant to prison for 180 days?"   After reviewing R.C. 2929.15, the court concluded as follows:

> * * * The Defendant's sentence is not for a felony four or a felony five. The Defendant's sentence is for multiple felonies.   And those felonies have been run, some of them, consecutive to each other for a total sentence of 34 months.   So I believe that that technical violation part of the statute in 2929.15(B)(1)(c) is not applicable.
>
> So if the Court were to find the Defendant guilty of sanctioned behavior as alleged and if the Court were to revoke his community control, the Court believes that he would be subject to the full 34 months. * * *

Defense counsel objected to the court's determination.

{¶ 9} Parole Officer Herb Nicholson testified that he supervised Nelson. Nicholson testified that he verbally advised Nelson that "he could not have any contact with [J. Elliott] due to the fact that she was drinking.   And we also had a discussion that she was also being supervised outside of this county."   Nicholson stated that he subsequently learned Nelson was in contact with Elliott.   He further testified that on December 23, 2017, Nelson was arrested after he kicked in the rear entrance door at 445 East Ward Street in Urbana, which was a residence Nelson shared with his aunt. Nicholson identified a written statement that Nelson provided to him at the Tri-County Regional Jail on January 2, 2018, in which Nelson admitted having contact with Elliott, drinking, arguing with his aunt about his drinking, and kicking in the door at the East Ward

Street address.

{¶ 10} Nelson's aunt testified that she called the police after the altercation with Nelson on December 23, 2017. She stated that Nelson had "been gone for a couple of days because I don't allow drinking. * * * [H]e came back that afternoon and he was highly intoxicated." She stated that Nelson was "yelling profanity" to be let into the home, and that she "didn't get to the door fast enough and he kicked it in."

{¶ 11} Nelson testified, and he acknowledged that Nicholson instructed him not to have any contact with Elliott. Regarding the door at the East Ward Street residence, Nelson testified that he "kicked it. But my intent was not to kick it in." He stated that his "hands were frozen so I was kicking the door with my feet. Nobody was answering so I kicked it hard." Nelson stated that he did not remember yelling profanities because he was "pretty intoxicated." Nelson testified that he no longer used cocaine, and that he smoked "marijuana here and there. But drinking is my main concern. That is what turns me evil. To me, that is my gateway. I start drinking and that opens the door to everything else."

{¶ 12} The following exchange occurred on cross-examination by the prosecutor:

Q. Mr. Nelson, you agree with me that back in June of 2017 Officer Nicholson told you not to have contact with [J.] Elliott?

A. Yes, sir.

* * *

Q. He explained that he believed Ms. Elliott was a bad influence in your life?

A. Yes, sir.

Q. And you chose to disregard that order and to continue to have a relationship with Ms. Elliott?

A. Yes, sir.

* * *

Q. * * * And because of that emotional attachment you made the choice to disregard your probation officer's order and chose Ms. Elliott over abiding community control; is that a fair statement?

A. Yes, sir, it is.

Q. And with regard to the conduct that took place on December 23, Ms. Elliott and you had been drinking that day; is that correct?

A. Yes, sir.

Q. So Ms. Elliott, you would agree with me then, was contributing to your violation of community control and that she was around you and was continuing to use alcohol and you were continuing to use alcohol?

A. That's correct.

Q. And you agree that alcohol was a contributing factor to your decision to go to 445 East Ward that day after you were told to leave?

A. Yes, sir.

Q. In fact, you were told to leave by [your aunt] because you were drinking; isn't that true?

A. Yes.

Q. And you are not disputing the fact that you were the one that caused damage to that door?

A.   No sir, I accept responsibility for my actions.

Q.   And you accepted responsibility in the Champaign County Municipal Court, didn't you?

A.   Yes, sir.

Q.   And you were convicted of criminal damaging related to that incident that took place on December 23; is that true?

A.   Yes, sir.

Q.   And you are not saying that you didn't yell and scream obscenities that day.   You're just saying, because of your state of intoxication, you can't recall whether you did yell or scream or anything?

A.   Correct.

{¶ 13} At the conclusion of the hearing, the court indicated as follows:

Court has reviewed the pre-sentence investigation report, statements of counsel, statements of the Defendant, and Court's interaction with the Defendant.   Court also took into consideration Probation Officer Nicholson's statement.   Court re-reviewed the testimony and evidence.

Court would note that in imposing sentence it considered and applied the purposes and principles of sentencing as set forth in 2929.11 divisions A, B, and C.   The Court also considered the seriousness of the conduct, the likelihood of recidivism, and the lack of service in the Armed Forces. Court finds Defendant has five prior terms of imprisonment.   He was on post-release control for a felony offense of violence when he committed the underlying felony offenses in the case at bar.   His relationship with

juveniles facilitated the commission of the corrupting another with drug offenses. And that in the underlying offense he used counterfeit money to buy drugs from a drug dealer, which elevated the risk of retaliation for the deceptive conduct thereby threatening public safety.

The Court would note that * * * the Defendant continues to disregard the no contact orders of the APA, to minimize the consumption of alcohol, and creation of risk factors that jeopardized his pro-social behavior. The continued contact in violation of the no contact order resulted in commission of misdemeanor acts of property destruction and reckless behavior.

The Court accepts your statement, Mr. Nelson, that you didn't intend to break the door down. But as you were giving your testimony, it occurred to me that it was ironic that you stated that you did work at the Caring Kitchen. So you knew the Caring Kitchen was a homeless shelter. Which meant you knew that if you couldn't get into your aunt's house, you certainly did have the option of going to the Caring Kitchen. And, for whatever reason, you chose not to do that.

Court revokes the Defendant's community control. Count Five, 17 months to the Ohio Department of Corrections. Count Six, 17 months to the Ohio Department of Corrections. Count Seven, 17 months to the Ohio Department of Corrections. Count Eight, 17 months to the Ohio Department of Corrections. The sentences in Counts Five and Six are concurrent to one another. The sentences in Counts Seven and Eight are concurrent to one another. The sentences in Counts Five and Six are

consecutive to Counts Seven and Eight for a total sentence of 34 months.

* * *

In imposing consecutive sentences the Court finds that consecutive sentencing is necessary to protect the public from future crime or to punish the Defendant. The consecutive sentences are not disproportionate to the seriousness of the Defendant's conduct and the danger that the Defendant poses to the public.

The Court also finds that the Defendant committed one or more of the multiple offenses while he was under post-release control for a prior offense. And that his history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the Defendant.

{¶ 14} The trial court's judgment entry similarly stated:

COMMUNITY CONTROL MERITS ADJUDICATION

Hearing was held on the merits of violation number 1, 2, and 3. Testimony was presented by the State of Ohio and the Defendant. Exhibits were admitted into evidence through the State of Ohio. The Court found the Defendant GUILTY of violation numbers:

1. On or about December 23, 2017, you did cause damage to property at 445 East Ward Street, Urbana, Ohio.

2. Since on and after December 1, 2017, you have had contact with [J.] Elliott in and around Champaign County, Ohio.

3. On or about December 23, 2017, you acted in a disorderly manner in

and around Champaign County, Ohio.

The judgment also stated that the court found that R.C. 2929.15(B)(1)(c) was "inapplicable to Defendant's sentence because the Defendant is sentenced on multiple felony offenses and consecutive felony offenses."

{¶ 15} The Entry further provided as follows:

In imposing consecutive sentences, the Court makes the following findings per *R.C. 2929.14(C)(4):*

● Consecutive sentencing is necessary to protect the public from future crime or to punish the Defendant and consecutive sentences are not disproportionate to the seriousness of the Defendant's conduct and to the danger the Defendant poses to the public. *R.C. 2929.14(C)(4)* <u>AND</u>

● The Defendant committed one or more of the multiple offenses while the Defendant was awaiting trial or sentencing, was on community control or was under post release control for a prior offense. *R.C. 2929.14(C)(4)(a).*

(Emphasis sic.)

{¶ 16} Nelson appeals, raising one assignment of error:

THE TRIAL COURT'S SENTENCE OF APPELLANT AT HIS COMMUNITY CONTROL VIOLATION HEARING WAS CONTRARY TO LAW.

{¶ 17} Nelson notes that R.C. 2929.15 "was recently amended by 2017 H.B. 49, which took effect on September 29, 2017." He asserts as follows:

This recent change to 2929.15(B) essentially means that if someone

is on community control for a fourth degree felony, unless that felony is an offense of violation [sic] or a sexually oriented offense, [then] if their community control violation is a either a technical violation or a misdemeanor, [then] any prison term imposed for this violation can be no greater than 180 days. * * *

* * *

In Mr. Nelson's case, all four of his convictions were for felonies of the fourth degree. As for his violations of probation, these violations are either technical violations * * * or a misdemeanor. There is no allegation that Mr. Nelson violated his probation by committing a new felony. Therefore, under the Revised R.C. 2929.15 the trial court was permitted to impose a sentence of no greater than 180 days. Even if the trial court imposed a sentence of 180 days on each felony, and ran each consecutive this would lead to a prison term of twenty-four months, which is ten months less than the sentence imposed by the trial court. Therefore, Mr. Nelson's sentence violates 2929.15 and is contrary to law.

{¶ 18} The State responds that R.C. 2929.15 "does not contain any specific language regarding 'stacking' felonies or does not denote the circumstances here regarding multiple felonies. * * * The circumstances set forth in the statute are for a single felony of the fifth degree or a felony of the fourth degree only."

{¶ 19} The State further asserts as follows:

Although the trial court found that, due to the multiple felonies to which Appellant was sentence[d], R.C. § 2929.15(B)(1)(c) was not

applicable, the State also contends that the record reflects that if such paragraph were applicable, the violations were clearly not "technical" violations. As the trial court summarized, this was not a situation where Appellant "had engaged in some sort of minor deviation from the terms of his community control." (See Disposition Hearing Transcript, p. 38)[.][2] Appellant was specifically told by APA Nicholson to have no contact with Ms. Jamie Elliott and Appellant agreed that she was a trigger for him and she was also on supervision. However, Appellant had numerous contacts with Ms. Elliott after receiving the no-contact order from APA Nicholson. * * * Further, Appellant had been given a number of sanctions by APA Nicholson without trial court intervention but to no avail.

{¶ 20} The State further asserts that this Court "cannot find by clear and convincing evidence that the record does not support the court's imposition of a 34 month term," since Nelson was sentenced to multiple felonies, and since his community control violations "were not 'technical' or solely 'misdemeanor' violations." According to the

---

[2] The transcript reflects that in fact the *prosecutor* indicated to the court as follows:

> * * * He's been given a number of different sanctions by Officer Nicholson without Court intervention.
>
> Wherein, Officer Nicholson tried to counsel him and steer him in the right direction. It's not a situation * * * where the Defendant has engaged in some sort of minor deviation from the terms of his community control and we're seeking to revoke him.
>
> Officer Nicholson, I think, has been doing his best to work with the Defendant and alter [sic] his behavior and criminal mindset. The Defendant has made the choice - - particularly I think it's demonstrated through his relationship with Ms. Elliott that he is going to exercise his own judgment ahead of the Court or Officer Nicholson with regard to certain areas of his life. And that is not going to allow him to be successful on community control. Unfortunately, the State thinks that revocation is the only option at this point.

State, Nelson's "continued behaviors of being highly intoxicated and kicking in the door of a residence, being the residence he used to see his girlfriend, is clearly not a technical violation." Finally, the State asserts that Nelson "has failed to show by clear and convincing evidence that the sentence was contrary to law and has failed to show that the record does not support the trial court's findings."

{¶ 21} R.C. 2929.15 provides in part:

(B)(1) If the conditions of a community control sanction are violated * * *, the sentencing court may impose upon the violator one or more of the following penalties:

* * *

(c) A prison term on the offender pursuant to section 2929.14 of the Revised Code and division (B)(3) of this section, provided that a prison term imposed under this division is subject to the following limitations, as applicable:

* * *

(ii) If the prison term is imposed for any technical violation of the conditions of a community control sanction imposed for a felony of the fourth degree that is not an offense of violence and is not a sexually oriented offense or for any violation of law committed while under a community control sanction imposed for such a felony that consists of a new criminal offense and that is not a felony, the prison term shall not exceed one hundred eighty days.

* * *

(3) The prison term, if any, imposed upon a violator pursuant to division (B)(1) of this section shall be within the range of prison terms available for the offense for which the sanction that was violated was imposed and shall not exceed the prison term specified in the notice provided to the offender at the sentencing hearing pursuant to division (B)(2) of section 2929.19 of the Revised Code.   * * *

{¶ 22}  The range of prison terms available for a felony of the fourth degree is six, seven, eight, nine, ten, eleven, twelve, thirteen, fourteen, fifteen, sixteen, seventeen, or eighteen months. R.C. 2929.14(A)(4).

{¶ 23} In *State v. Mannah*, 5th Dist. Fairfield No. 17-CA-54, 2018-Ohio-4219, the Appellant appealed from the revocation of her community control sanctions and the imposition of a ten-month sentence.   After pleading guilty on November 22, 2016, to one count of possession of heroin and three counts of aggravated trafficking in drugs, Mannah was sentenced to three years of community control for possession of heroin and three years of community control for one of the aggravated trafficking offenses.  *Id*. at ¶ 2. Mannah was sentenced to 14 months on the two remaining aggravated trafficking offenses, to be served consecutively.  *Id.*  "The court advised [Mannah] revocation of her community control could result in the imposition of a sentence of ten months incarceration for possession of heroin and fourteen months incarceration for aggravated trafficking, to be served consecutively to any other sentence previously imposed."  *Id.*

{¶ 24}  Mannah was granted judicial release on July 6, 2017, and "as a condition of her community control, she was to successfully complete all CBCF program requirements.   On October 31, she asked to be unsuccessfully terminated from the

program." *Id.* at ¶ 3.

{¶ 25} After the trial court determined Mannah's community control violation "to be non-technical in nature," it imposed the ten-month sentence for possession of heroin, as well as "the remaining term of incarceration of 351 days for two convictions of aggravated trafficking." The court allowed Mannah "to remain on community control with regard to the remaining conviction of aggravated trafficking." *Id.* at ¶ 4.

{¶ 26} On appeal, Mannah argued that "the court's sentence of ten months violates R.C. 2929.15(B)(1)(c), and further the statute implicitly prohibits the imposition of consecutive sentences." *Id.* at ¶ 6. Mannah asserted that her community control violation "was a technical violation because the violation did not constitute a crime or other violation of the law." *Id.* at ¶ 8.

{¶ 27} The Fifth District thoroughly considered the meaning of "technical violation" as follows:

> The Eleventh Appellate District addressed R.C. 2929.15(B) in a case where the defendant overdosed on heroin in violation of the terms of her community control. *State v. Cozzone*, 11th Dist. Geauga No. 2017-G-0141, 2018-Ohio-2249. The defendant argued her community control violation was technical in nature, and therefore, the maximum prison term which could be imposed for the violation was 180 days. The appellate court observed the term "technical violation" was not defined in R.C. 2929.15; however, other appellate districts had addressed "technical violations" as they pertained to revocation of community control sanctions and parole violations in cases predating the statutory amendment. *Id.* at

¶ 38, citing *State v. Cearfoss*, 5th Dist. Stark No. 2004CA00085, 2004-Ohio-7310 (defendant's failure to follow his probation officer's order to open the front door was a "technical violation"); *State v. Jenkins*, 2d Dist. Champaign No. 2005-CA-22, 2006-Ohio-2639 (defendant's failure to notify his parole officer before moving out of his residence where a convicted felon resided was "at best a 'technical' violation"); and *Amburgey v. Ohio Adult Parole Auth.*, 12th Dist. Madison No. CA2001-07-016, 2001 WL 1256365, * * * ("technical" violations, in the context of parole, are those violations of the terms and conditions of the parole agreement which are not criminal in nature, such as failure to report to the parole officer, association with known criminals, leaving employment, and leaving the state). The *Cozzone* court concluded overdosing on drugs was criminal in nature and therefore could not be considered a "technical violation" of community control. *Cozzone, supra*, at ¶ 39.

*Mannah* at ¶ 9.

**{¶ 28}** We note that, specifically, the court in *Cozzone* concluded that "[a]lthough appellant was not charged or convicted for this conduct, overdosing on drugs is criminal in nature and cannot be considered a "technical" violation of the terms and conditions of community control." *Cozzone* at ¶ 39.

**{¶ 29}** Finally, the court in *Mannah* considered the rationale in *State v. Davis*, 12th Dist. Warren No. CA2017-11-156, 2018-Ohio-2672, wherein the Twelfth District considered "the identical argument raised in the instant case with regard to a defendant who had signed himself out of a CBCF program," and concluded that the "violation was

not technical in nature." *Mannah* at ¶ 10. The court in *Davis* determined as follows:

> We decline appellant's request to find that his voluntary signing himself out of the CBCF in violation of his community control was merely technical in nature. * * * [A]ppellant's community control sanctions included standard rules and conditions as well as several "special conditions." One such condition required appellant to complete treatment at a CBCF. Appellant's voluntary discharge from the CBCF's program and thus his failure to complete treatment there were not a violation of a standard term of community control, but rather, were a violation of a special condition of community control imposed by the trial court and specifically tailored to address and treat appellant's substance abuse issues. * * *
>
> Moreover, the condition that appellant complete the CBCF treatment program was not an administrative requirement facilitating community control supervision, as was the case in *Cearfoss*, *Jenkins*, or *Amburgey*. Rather, the special condition was a substantive rehabilitative requirement which addressed a significant factor contributing to appellant's criminal conduct. Appellant's voluntary discharge from the CBCF's treatment program, therefore, cannot be considered a technical violation of community control.

*Davis* at ¶ 17-18.

**{¶ 30}** After considering *Davis*, the court in *Mannah* concluded as follows:

> Had the legislature intended R.C. 2929.15(B)(1)(c)(i)[3] to apply to all

---

[3] R.C. 2929.15(B)(1)(c)(i) provides: "If the prison term is imposed for any technical

violations of community control which were non-criminal in nature, it could have specifically stated so in the statute. Thus, the choice of the term "technical" implies it has meaning distinct from "non-criminal" violations. R.C. 2929.15(B)(1)(c)(i) specifically sets forth the ninety-day sentence limitation applies for violations of the law which are not felonies, if community control was imposed for a felony. If the legislature intended the statute to apply solely to violations of community control which constitute criminal offenses, it would have said so directly.

We concur with the reasoning of the Twelfth District and find the trial court did not err in finding the violation in the instant case to be non-technical in nature. Appellant was required to successfully complete treatment at CBCF as a substantive rehabilitative requirement to address a factor contributing to her drug convictions. Appellant willfully checked herself out of the program, requesting to be unsuccessfully terminated from the program. Although not criminal, we agree with the trial court the violation was non-technical in nature. Therefore, R.C. 2929.15(B)(1)(c)(i) does not apply, and the court did not err in sentencing Appellant to ten months incarceration.

*Mannah*, 5th Dist. Fairfield No. 17-CA-54, 2018-Ohio-4219, at ¶ 14-15.

{¶ 31} Having concluded that R.C. 2929.15(B)(1)(c)(i) did not apply, the court

---

violation of the conditions of a community control sanction imposed for a felony of the fifth degree or for any violation of law committed while under a community control sanction imposed for such a felony that consists of a new criminal offense and that is not a felony, the prison term shall not exceed ninety days."

declined to address Mannah's assertion that "the statute implicitly prohibits consecutive sentencing." *Id.* at ¶ 16.

**{¶ 32}** We disagree with Nelson's assertion that all of his community control violations are "either technical violations * * * or a misdemeanor," such that R.C. 2929.15(B)(1)(c)(ii) applies to limit his sentence. We find the distinction in *Davis* to be instructive between "an administrative requirement *facilitating* community control *supervision,*" as in *Cearfoss* and *Jenkins,* and "a substantive rehabilitative requirement which *addressed a significant factor contributing to appellant's criminal conduct."* (Emphasis added.) Nelson was ordered to have no contact with Elliott in order to address an issue that significantly contributed to his criminal conduct, namely consuming alcohol. The no-contact sanction was specifically tailored to Nelson. He acknowledged that drinking alcohol was his "main problem," and that Elliott's use of alcohol around him contributed to his drinking and his violations of community control. The prosecutor identified with particularity Nelson's contact with Elliott as the basis for his failure to succeed on community control, and the trial court similarly concluded that Nelson's contact with Elliott "resulted in commission of misdemeanor acts of property destruction and reckless behavior." For the foregoing reasons, we conclude that Nelson's contact with Elliott, although non-criminal in nature, was not a technical violation, and that R.C. 2929.15(B)(1)(c)(ii) did not apply to limit Nelson's sentence. In other words, Nelson's sentence does not violate R.C. 2929.15(B)(1)(c)(ii) and is not contrary to law. Nelson's sole assigned error is overruled, and the judgment of the trial court is affirmed.

. . . . . . . . . . . .

FROELICH, J. and TUCKER, J., concur.


Copies sent to:

Jane A. Napier
James S. Sweeney
Hon. Nick A. Selvaggio