[Cite as *State v. Cantrell*, 2019-Ohio-4718.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

    v.

KEVIN CANTRELL,

    DEFENDANT-APPELLANT.

CASE NO. 9-19-14

O P I N I O N

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

    v.

KEVIN CANTRELL,

    DEFENDANT-APPELLANT.

CASE NO. 9-19-15

O P I N I O N

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

    v.

KEVIN CANTRELL,

    DEFENDANT-APPELLANT.

CASE NO. 9-19-16

O P I N I O N

Case Nos. 9-19-14, 9-19-15 and 9-19-16

**Appeals from Marion County Common Pleas Court**
**Trial Court Nos. 17-CR-505, 18-CR-157 and 18-CR-158**

**Judgments Affirmed**

**Date of Decision:  November 18, 2019**

APPEARANCES:

*Thomas A. Gjostein* **for Appellant**

*Nathan Heiser* **for Appellee**

SHAW, J.

{¶1} Defendant-appellant, Kevin Cantrell ("Cantrell"), appeals the February 14, 2019 judgment entries of the Marion County Common Pleas Court revoking his community control in three separate cases after Cantrell failed to comply with specific terms and conditions of his community control sanctions.  On appeal, Cantrell argues that his conduct comprising the violations was non-criminal in nature and amounted to mere "technical violations" of his community control. Cantrell asserts that the trial court was not authorized to impose a prison term of more than 180 days as a sanction for his violations under the sentencing limits in R.C. 2929.15(B)(1)(c).

*Case No. 2017 CR 0505*

{¶2} On December 13, 2017, in case number 2017 CR 0505, the Marion County Grand Jury returned a one count indictment against Cantrell alleging that he

committed the offense of Receiving Stolen Property, in violation of R.C. 2913.51(A), a felony of the fourth degree. The charges stemmed from a report that the Marion Police Department had received of a stolen vehicle. Law enforcement located the vehicle the same day when it was observed travelling on a local road. A brief chase ensued leading to the driver fleeing on foot. Shortly thereafter, the driver of the vehicle was apprehended and identified as Cantrell.

{¶3} On December 18, 2017, Cantrell was arraigned and entered a plea of not guilty. Cantrell was released on bond subject to certain terms and conditions. Approximately a week later, a bench warrant was issued for Cantrell's arrest because he had committed another crime while on bond and had failed to report to the probation department. A bond violation hearing was held. Cantrell's bond was revoked and the amount was reset.

{¶4} On February 1, 2018, Cantrell plead guilty to the fourth degree felony offense stated in the indictment. The trial court accepted Cantrell's plea and found him guilty. The trial court transferred the case to a specialized drug treatment docket subject to Cantrell's compliance with specific terms and conditions of the program. The trial court sentenced Cantrell to three years of community control sanctions. The trial court notified Cantrell that if he violated the terms and conditions of his community control an eighteen month prison term may be imposed.

{¶5} On May 16, 2018, the trial court issued an entry journalizing Cantrell's violation of his community control. The trial court noted that Cantrell waived a

formal violation hearing and agreed to proceed with sanctions imposed by the county adult probation department. These sanctions included 25 days in jail, a completion of 80 hours of community service, residence in a sober living home for 120 days, and attendance of daily substance abuse meetings for the first two weeks.

{¶6} On May 29, 2018, the trial court issued a judgment entry stating that Cantrell had produced a positive drug screen and was ordered to complete four hours of community service by June 1, 2018.

{¶7} On June 5, 2018, a bench warrant was issued for Cantrell's arrest based upon allegations that Cantrell violated the terms of his community control. The trial court held a hearing and found that Cantrell had violated the terms of his community control by failing to: 1) obey all laws; 2) report to his probation officer; 3) submit to drug or alcohol testing; and 4) live in the sober living home for at least 120 days. The trial court ordered Cantrell's community control sanctions to be extended for six months and imposed additional terms and conditions. The trial court again notified Cantrell that an eighteen month prison term may be imposed if he violated the terms and conditions of his community control.

*Case No. 18 CR 157*

{¶8} On April 5, 2018, in Case No. 18 CR 157, the Marion County Grand Jury returned a two count indictment against Cantrell alleging he committed the offenses of Receiving Stolen Property, in violation of R.C. 2913.51(A), a felony of the fourth degree, and Receiving Stolen Property, in violation of R.C. 2913.51(A),

a felony of the fifth degree. The charges stemmed from a report received by the Marion Police Department of a stolen truck, which was eventually returned to its rightful owner. However, the owner of the vehicle reported that a large amount of tools was also stolen from the vehicle. Law enforcement was contacted by a confidential informant who claimed that Cantrell had admitted to stealing the vehicle and had attempted to sell the tools to the informant. The informant indicated that Cantrell had later abandoned the truck after selling the tools.

{¶9} On April 9, 2018, Cantrell was arraigned, entered a plea of not guilty, and was released on bond.

{¶10} On June 15, 2018, Cantrell plead guilty to one count of fourth degree felony Receiving Stolen Property. Pursuant to a negotiated plea agreement, the State agreed to *nolle prosequi* the fifth degree felony Receiving Stolen Property charge listed in the indictment. The trial court accepted Cantrell's guilty plea, and placed the case on a specialized drug treatment docket subject to Cantrell's compliance with certain terms and conditions.

{¶11} On July 3, 2018, the trial court sentenced Cantrell to three years of community control. The trial court notified Cantrell that if he violated the terms and conditions of his community control a fifteen month prison term may be imposed.

*Case No. 18 CR 158*

**{¶12}** On April 5, 2018, in Case No. 18 CR 158, the Marion County Grand Jury returned a two count indictment against Cantrell alleging he committed the offense of Possession of Drugs, in violation of R.C. 2925.11(A),(C)(2)(a), a felony of the fifth degree. The allegations stemmed from an incident at the Multi-County Correctional Center, where Cantrell was incarcerated. Authorities at the facility reported strange behavior from Cantrell, which culminated in a struggle with other inmates. During this physical altercation, Cantrell threw two bags of suspected illegal substances from his person. The substances were later determined to be a Schedule III narcotic. Cantrell was arraigned, entered a plea of not guilty, and was released on bond.

**{¶13}** On June 15, 2018, Cantrell pled guilty to the charge listed in the indictment. The trial court accepted Cantrell's guilty plea, and placed the case on a specialized drug treatment docket subject to Cantrell's compliance with certain terms and conditions.

**{¶14}** On July 3, 2018, the trial court sentenced Cantrell to three years of community control sanctions. The trial court notified Cantrell that if he violated the terms and conditions of his community control a nine month prison term may be imposed.

*Underlying Community Control Violations and Revocations*

**{¶15}** On January 24, 2019, Cantrell's probation officer filed, in all three cases, a notice informing the trial court of his belief that Cantrell had violated the terms and conditions of his community control. Specifically, Cantrell was alleged to have failed to: 1) report to his probation officer; 2) submit to drug or alcohol testing; and 3) not purchase, possess, or consume any type of alcoholic beverages or illegal drugs. The allegations were premised upon Cantrell failing to report to his probation officer as instructed, refusing to submit to a drug test when requested on January 10, 2019, and then testing positive for illegal drugs on a test given January 14, 2019.

**{¶16}** On February 1, 2019, Cantrell appeared for a hearing on the revocation issue where he admitted to the violations and requested a bifurcated hearing.

**{¶17}** On February 12, 2019, Cantrell appeared for disposition on the violations. The trial court revoked Cantrell's community control sanctions in all three cases. The trial court imposed the eighteen month prison term in Case No. 2017 CR 0505 and the fifteen month prison term in Case No. 18 CR 157 to run consecutive to one another for a total term of thirty three months. The trial court also imposed the nine month prison term in Case No. 18 CR 158, but ordered that prison term to run concurrent to the prison terms imposed in the other two cases. Cantrell was granted 324 days of jail time credit in Case No. 2017 CR 0505.

{¶18} It is from this judgment entry that Cantrell now appeals, asserting the following assignment of error.

**THE TRIAL COURT ERRED IN REVOKING APPELLANT'S PROBATION FOR A TECHNICAL VIOLATION WHICH IS PROHIBITED PURSUANT TO REVISED CODE SECTION § 2929.15(B)(1)(C)(i)&(ii).**

{¶19} In his sole assignment of error, Cantrell contends that his violations were "non-criminal" in nature and merely "technical violations." As such, Cantrell argues that the trial court erred when it imposed prison terms of eighteen, fifteen, and nine months as a sanctions for his violations because R.C. 2929.15(B) limits a trial court's authority to impose a prison term for a "technical violation" of community control to 180 days.

*Relevant Legal Authority*

{¶20} R.C. 2929.15(B) governs the penalties available to the sentencing court when an offender violates community control. In 2017, the Ohio legislature amended R.C. 2929.15(B) to place limitations on prison terms imposed for violations of a community control sanction for certain fourth or fifth degree felonies. *See* 2017 H.B. 49 ("H.B. 49"). Specifically, R.C. 2929.15(B) states in pertinent part:

> **(B)(1) If the conditions of a community control sanction are violated or if the offender violates a law or leaves the state without the permission of the court or the offender's probation officer, the sentencing court may impose upon the violator one or more of the following penalties:**

\* \* \*

**(c) A prison term on the offender pursuant to section 2929.14 of the Revised Code and division (B)(3) of this section, provided that a prison term imposed under this division is subject to the following limitations, as applicable:**

**(i) If the prison term is imposed for any technical violation of the conditions of a community control sanction imposed for a felony of the fifth degree or for any violation of law committed while under a community control sanction imposed for such a felony that consists of a new criminal offense and that is not a felony, the prison term shall not exceed ninety days.**

**(ii) If the prison term is imposed for any technical violation of the conditions of a community control sanction imposed for a felony of the fourth degree that is not an offense of violence and is not a sexually oriented offense or for any violation of law committed while under a community control sanction imposed for such a felony that consists of a new criminal offense and that is not a felony, the prison term shall not exceed one hundred eighty days.**

R.C. 2929.15(B)(1).

{¶21} As clearly stated, the sentencing limitations set forth in R.C. 2929.15(B)(1)(c) apply only to "technical violations." However, the term "technical" is not defined in the statute. Cantrell asserts that technical violations are those violations of community control which are "non-criminal" in nature. Cantrell's argument is based on the definition set forth in *State ex rel. Taylor v. Ohio Adult Parole Auth.*, 66 Ohio St.3d 121, 124 (1993), citing *Inmates' Councilmatic Voice v. Rogers*, 541 F.2d 633 (6th Cir.1976) ("Technical violations are those violations of the terms and conditions of the parole agreement which are not

criminal in nature such as failure to report to the parole officer, association with known criminals, leaving employment, leaving the State, etc.").

**{¶22}** However, we agree with the First District that *Taylor* and *Inmates Councilmatic* are not dispositive of this issue because those cases did not involve technical violations under R.C. 2929.15(B)(1)(c). *State v. Kernall*, 1st Dist. Hamilton No. C-180613, 2019-Ohio-3070, ¶ 15.

**{¶23}** Moreover, several Appellate Districts have examined the term "technical violation" under R.C. 2929.15(B)(1)(c) in the context of a defendant arguing that the violation was "non-criminal" in nature and therefore the sentencing limitations applied. For instance, in *State v. Nelson*, the Second District determined that the term "technical" implies it has meaning distinct from "non-criminal" violations. *Nelson*, 2d Dist. Champaign No. 2018-CA-5, 2018-Ohio-4763, ¶ 30, citing *State v. Mannah*, 5th Dist. Fairfield No. 17-CA-54, 2018-Ohio-4219, ¶ 14 ("Had the legislature intended R.C. 2929.15(B)(1)(c)(i) to apply to all violations of community control which were noncriminal in nature, it could have specifically stated so in the statute.").

**{¶24}** Following Fifth and Twelfth District jurisprudence, the court in *Nelson* adopted a bright-line rule distinguishing between " 'an administrative requirement facilitating community control supervision,' " the violation of which would be "technical," and " 'a substantive rehabilitative requirement which addressed a significant factor contributing to appellant's criminal conduct,' " the

violation of which would be "non-technical."  *Nelson* at ¶ 32, citing *State v. Mannah*, 5th Dist. Fairfield No. 17-CA-54, 2018-Ohio-4219; *State v. Davis*, 12th Dist. Warren No. CA2017-11-156, 2018-Ohio-2672.  Based on this distinction, the court in *Nelson* held that the defendant's violation of his community control, which required him to have no contact with a certain individual, was specifically tailored to the defendant to address his problematic consumption of alcohol and even though "non-criminal" in nature was a "non-technical" violation for purposes of R.C. 2929.15(B)(1)(c)(ii).[1]

{¶25} The Sixth District in examining this issue further observed that "common sense and the evident purpose for trial courts to retain broad discretion to both determine revoking a community control sanction and then to fashion an appropriate sanction for that violation lead us to view the General Assembly did not intend 'technical violations' to impede a court's discretion to sanction under the totality of the circumstances to specifically tailor substantive rehabilitative requirements designed to address the offender's conduct."  *State v. Calhoun*, 6th Dist. Wood No. WD-17-067, 2019-Ohio-228, ¶ 30.  The court in *Calhoun* adopted the rationale set forth by the Fourth, Fifth, and Twelfth Districts finding that a defendant's violation of a specifically-tailored condition cannot be considered a technical violation of community control because " 'the special condition was a

---

[1] Notably, the Supreme Court of Ohio has recently accepted jurisdictional review of this issue in *Nelson*.  *See*, *State v. Nelson*, 155 Ohio St. 3d 1412, 2019-Ohio-1205.

substantive rehabilitative requirement which addressed a significant factor contributing to appellant's criminal conduct.' " *Id.*, citing *Davis* at ¶ 18; *Nelson* at ¶ 32; *Abner*, 4th Dist. Adams Nos. 18CA1061, 2018-Ohio-4506, at ¶ 13*; Mannah* at *¶ 13.* We agree with the approach taken by these courts.

*Discussion*

{¶26} Turning now to the facts presented in the instant case. The record indicates that Cantrell's chronic drug addiction contributed to him committing the offenses for which he was placed on community control in each of the three cases. The trial court attempted to assist Cantrell in addressing his drug addiction by placing the cases on a specialized drug treatment docket, and imposing terms and conditions of his community control sanctions focusing on drug abuse rehabilitation. Cantrell first violated the terms and conditions of his community control sanctions in Case No. 2017 CR 0505 when he was arrested for Criminal Trespass, failed to report to his probation officer, failed to submit to drug or alcohol testing, and refused to live in the sober living home for at least 120 days. Instead of revoking his community control sanctions and removing his cases from the specialized docket, the trial court extended Cantrell's term of community control for six months.

{¶27} Nearly eight months later, Cantrell admitted to violating the terms of his community control which required him to report to his probation officer, submit to drug or alcohol testing, and not to purchase, possess, or consume any type of

alcoholic beverages or illegal drugs. At the revocation hearing, the trial court

addressed Cantrell and elaborated upon his conduct comprising the violations of his

community control:

> **Trial Court: [T]he thing that most irks me about your violations and the things you did to find yourself here today are—was that you were involved in drug use with other people in my [drug court] program. And to me, that's the cardinal sin. Under—you know, there's a lot of self-destructive behavior amongst addicts and so I can forgive that. But when you tear down—where you enable the other people who are—I'm trying to help, by using with them, that's the thing that I just lose patience with. Because endangering yourself is—is one thing. Endangering the public in general is one thing. But trying to tear down people who are at their weakest moments and are asking for help, and this Court has spent—(inaudible)—to help those people, is the thing that just—which makes you different in my eyes. You know, to be real frank, I'm not happy that you appear to use the program as some sort of dating service either. You seem to have been involved with several of the ladies in the program and I don't—I think that interferes with people's recovery as well. But that's not why I'm doing what I'm doing. It's the fact that you chose to party with people in that program and especially the one that just graduated, which was a really bad choice for everybody. She worked really hard to get to that point and I'm not saying you're responsible for her choices, she is. But, just like you—you know, you've been the program long enough to know that you can help each and be supportive of each other or you can also be, you know— encouragement to make bad decisions for each other and support each other in the wrong way. I see a lot of that going on.**
>
> **I recognize what [Defense Counsel is] saying. These folks who are in these specialized dockets and Drug Courts, not only the Court, Probation Department, but their own attorneys pour a lot of themselves into. Counsel like [Defense Counsel], who really advocates and begs, pleads; whatever he needs to get people into this limited space program that the Court –(inaudible). And when people with three cases get into it and are given multiple chances, he's really gone out—in some ways he put his own credibility on**

**the line with the Court. I know—I don't hold that against [Defense Counsel] or any other attorney that does that. I'm just saying you really had the best representation that we have here in Marion county.**

(Rev. Hrg., Feb. 12, 2019 at 4-5).

{¶28} The trial court then announced its decision to revoke Cantrell's community control in all three cases and to impose the prison terms notified on record at the time Cantrell was placed on community control. The trial court encouraged Cantrell to take seriously the drug rehabilitation programs offered in prison and informed him that the court would "leave the door open to judicial release." (Id. at 7).

{¶29} We agree with the rationale utilized by the Sixth District in *Calhoun* that the intent of the Legislature in creating the sentencing limitations in R.C. 2929.15(B)(1)(c) was not to impede a court's discretion to devise a sanction under the totality of the circumstances to specifically tailor substantive rehabilitative requirements designed to address the offender's conduct. Here, the trial court fashioned community control terms and conditions to specifically address Cantrell's substance abuse and addiction, which evidentially was the underlying cause of most of his criminal conduct. The record indicates that the trial court gave Cantrell ample opportunity to avail himself of the rehabilitative resources provided by the trial court including placing Cantrell's cases on a specialized docket with limited space for participants. Instead, Cantrell not only refused to reform and to further engage in

his destructive behavior and drug use, but he also undermined the success of other participants in the drug court program.

{¶30} Accordingly, we conclude that the record supports the trial court's finding that Cantrell's conduct constituted more than mere "technical violations," but rather amounted to serious infractions warranting the revocation of his community control sanctions.

{¶31} Based on the foregoing, the assignment of error is overruled and the judgments and sentences of the trial court are affirmed.

***Judgments Affirmed***

**ZIMMERMAN, P.J. and PRESTON, J., concur.**

**/hls**