[Cite as *State v. Yauger*, 2023-Ohio-815.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                           :

    Plaintiff-Appellee,           :

                                       No. 111734

    v.                                 :

JOSEPH MICHAEL YAUGER,                    :

    Defendant-Appellant.          :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** March 16, 2023

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case Nos. CR-20-654499-A and CR-21-659406-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Alicia Harrison, Assistant Prosecuting
Attorney, *for appellee.*

Cullen Sweeney, Cuyahoga County Public Defender, and
Michael V. Wilhelm, Assistant Public Defender, *for
appellant.*

FRANK DANIEL CELEBREZZE, III, P.J.:

{¶ 1} Joseph Michael Yauger appeals the sentence imposed following the trial

court's finding that he violated his community-control sanctions. Yauger contends

that the trial court erred (1) in imposing a sentence that it did not initially journalize;

(2) because the record does not clearly and convincingly support the imposition of consecutive sentences; and (3) in imposing a prison sentence where the community-control sanctions violation was merely a technical violation that only warranted jail time. After a careful review of the facts and law, we affirm the judgment of the trial court.

## I. Factual and Procedural History

{¶ 2} Yauger was indicted in two separate cases: Cuyahoga C.P. Nos. CR-21-659406-A and CR-20-654499-A, each for a single count of grand theft in violation of R.C. 2913.02(A)(3), a fourth-degree felony. Yauger entered a guilty plea to both counts. In each case, Yauger entered into contracts with two families for construction projects, collected the money, and then never performed the work.

{¶ 3} At a joint sentencing hearing, Yauger, through counsel, admitted that his intent was never to defraud anyone and that he was battling a gambling problem that exacerbated his failure to perform on his contractual obligations. The trial court sentenced Yauger to community-control sanctions for a period of five years and ordered Yauger to pay full restitution to his victims ($22,900.83 in CR-21-659406 and $8,600 in CR-20-654499) and developed a monthly repayment plan with input from Yauger regarding what he was able to pay. Yauger admitted that he owed money to other victims and indeed had other cases pending in Lorain County where he was going to owe money to additional victims. The court advised him that he was to comply with all rules of the community-control department, submit to random drug testing, and take a gambling assessment.

{¶ 4} In January 2022, the court held a community-control sanctions violation hearing. Appellant had fallen behind on his monthly restitution payments and never participated in the gambling assessment. The trial court imposed a 30-day jail sentence, which was held in abeyance "until summertime." The trial court advised Yauger that if he paid the full restitution amount, it would consider reducing the jail time.

{¶ 5} In July 2022, the court held another community-control sanctions violation hearing. Appellant remained behind on his restitution payments and still failed to complete the gambling assessment. Further, Yauger failed to report to and maintain contact with the community-control department. Finding that he was not amenable to community-control sanctions, the trial court sentenced Yauger to 18 months in prison on both cases, which were to run consecutively.

{¶ 6} Yauger timely appealed the sentence imposed, assigning three errors for our review.

> I. The trial court did not journalize an 18-month sentence in the original sentencing entry for case CR-20-654499 and therefore cannot now impose that sentence for a violation of community control.

> II. The record does not clearly and convincingly support consecutive sentence findings[.]

> III. The trial court erred in not finding that the failure to make regular restitution payments was a technical violation of community control and therefore did not warrant more than 180 days in jail.

## II. Law and Analysis

### A. Prior Journalization of Possible Sentence

{¶ 7} In his first assignment of error, Yauger disputes one of his 18-month sentences as improperly imposed.

{¶ 8} The trial court sentenced Yauger on both cases in a joint sentencing hearing. After the hearing, the trial court journalized a separate sentencing entry in each case. In CR-21-659406, the sentencing entry states that "violation of the terms and conditions may result in more restrictive sanctions, or a prison term of 18 month(s) as approved by law." This sentence, however, is absent from the sentencing entry in CR-20-654499.

{¶ 9} Yauger argues that because the trial court only journalized this possibility in one of his cases, CR-21-659406, the trial court erred in imposing the 18-month sentence with respect to CR-20-654499.

{¶ 10} R.C. 2929.19(B)(4) mandates that when imposing a community-control sanction, the court shall

> *notify* the offender that, if the conditions of the sanction are violated * * * the court may impose a longer time under the same sanction, may impose a more restrictive sanction, or may impose a prison term on the offender and shall indicate the range from which the prison term may be imposed as a sanction for the violation[.]

(Emphasis added.)

{¶ 11} In *State v. Brooks,* 103 Ohio St.3d 134, 2004-Ohio-4746, 814 N.E.2d 837, the Ohio Supreme Court evaluated the timing and format of the notification required under a former version of R.C. 2929.19(B) that used the same language as

the current R.C. 2929.19(B)(4). The *Brooks* Court held that "a trial court sentencing an offender to a community control sanction is required to deliver the statutorily detailed notifications at the sentencing hearing." *Id.* at ¶ 15. The *Brooks* Court expounded upon this holding, noting that "notification given in a court's journal entry issued after the sentencing does not comply with R.C. 2929.19(B)[(4)]." *Id.* at ¶ 18.

{¶ 12} Pursuant to *Brooks*, the court properly notified Yauger of his potential prison term at the sentencing hearing as required by R.C. 2929.19(B)(4).

> THE COURT: If you fail to comply with these orders of probation, you are looking at 18 months on Case 659406, and 18 months in prison on 654499, consecutive to each other. It's 36 months in prison.
>
> * * *
>
> Do you have any questions?
>
> THE DEFENDANT: No, sir.

(Tr. 31-32.)

{¶ 13} Yauger was yet again informed of the potential prison term he faced in the event of a community-control violation at his first community-control violation hearing, where the following exchange took place:

> THE COURT: * * * If you fail to comply with probation you're looking at that 36 months in prison. Do you have any questions?
>
> THE DEFENDANT: No, sir.

(Tr. 43.)

{¶ 14} Next, we will examine whether the trial court's failure to journalize this notification in CR-20-654499 was error.

{¶ 15} Yauger asks us to read R.C. 2929.19(B)(4) in conjunction with well-settled law that a court speaks through its journal entries. *State v. Steinke*, 8th Dist. Cuyahoga No. 81785, 2003-Ohio-3527, ¶ 45, citing *Gaskins v. Shiplevy*, 76 Ohio St.3d 380, 382, 667 N.E.2d 1194 (1996). However, pursuant to Crim.R. 36, a court retains jurisdiction to correct clerical mistakes *at any time* to conform to the transcript of the proceedings. (Emphasis added.) *Id.* at ¶ 47.

{¶ 16} Yauger directs us to this court's decision in *State v. Sheffield*, 8th Dist. Cuyahoga No. 95434, 2011-Ohio-2395. In *Sheffield*, the trial court orally advised the defendant of his possible sentence in the event of a community-control violation in the following manner: "You have four F3's. Five years on each F3. Eighteen months on 15 F4's. You have two F5's, 12 months for each of those. I'll run them consecutive." *Id.* at ¶ 19. Nonetheless, when the court journalized the sentence, it instructed that a community-control sanctions violation could result in "a prison term of 5 years as approved by law. (5 years on each F-3, 18 months each F-4 and 12 months each F-5, counts to run concurrent to each other.)" *Id.* at ¶ 22. After the defendant was already sentenced to eight years for his community-control violation, the trial court in *Sheffield* issued a nunc pro tunc entry correcting the total possible sentence to 44 years. This court reversed, finding that the trial court erred when it modified a misleading sentencing entry *after* the defendant was sentenced to eight years because this frustrated the purpose of R.C. 2929.19(B)(4), which was intended

to provide notice to the offender before the sentence was imposed. *Id.* at ¶ 24. In reversing, the *Sheffield* Court noted that "the trial court could not avoid the clear and unambiguous five-year limit by issuing a nunc pro tunc sentencing journal entry changing 'five years' to '44 years, 6 months[.]'" *Id.* at ¶ 24.

{¶ 17} We find the instant matter factually distinguishable because there are no concerns that Yauger was notified of his sentence after the sentence was imposed, as was the concern in *Sheffield*. Yauger was properly informed, pursuant to *Brooks*, about the specific maximum prison time that the trial court could impose. We find this matter particularly distinguishable because Yauger was informed about the maximum sentence of 36 months that he could face at *both* the initial sentencing hearing, and then yet again at the first community-control violation hearing. Yauger himself does not dispute that the trial court directly and unambiguously addressed the maximum amount of prison time that Yauger would face in the event of a community-control violation at the sentencing hearing, where it was required and before the actual sentence was imposed: "Here, the trial court made Mr. Yauger aware that it would impose two 18-month sentences to run consecutive each other. The court informed him clearly at his sentencing hearing * * *[.]" Yauger also does not suggest that he was unaware of the potential term he faced or that the notification improperly occurred after the sentence was imposed, but merely asserts that the notice he was given at the hearing was absent from one of the sentencing entries. Because Yauger was properly notified before the sentence was imposed, and

then notified again at a subsequent hearing, we find that the statutory purpose of R.C. 2929.19(B)(4), to put the defendant on notice, was properly fulfilled.

{¶ 18} We also find the cases cited by the dissent distinguishable. The dissent cites *State v. Lenhart*, 8th Dist. Cuyahoga No. 108938, 2020-Ohio-2727, ¶ 14; *State v. Brown*, 8th Dist. Cuyahoga Nos. 105211 and 106278, 2018-Ohio-88, ¶ 9; and *State v. Goforth*, 8th Dist. Cuyahoga No. 90653, 2008-Ohio-5596, ¶ 20, for the proposition that notification must also be contained in the sentencing entry. Our review of these cases indicates that in all three, the trial court's oral notification at the sentencing hearing was insufficient under the *Brooks* standard. In *Lenhert*, the defendant was notified that he "can be sentenced to prison." *Id.* at ¶ 17. In *Brown*, the defendant was not notified that prison could be imposed in the event of a violation at all. *Id.* at ¶ 11. In *Goforth*, the defendant was notified that he could be sent to prison, but a specific term was not specified. *Id.* at ¶ 3.

{¶ 19} While each of these cases state that the notification must also be in the sentencing entry, that must be read in the context of each case; in each of these cases, the court failed to properly notify the defendant pursuant to *Brooks*. In the instant matter, we have established that Yauger was properly notified at the sentencing hearing. Pursuant to Crim.R. 36, the trial court maintains jurisdiction to correct a journal entry to align with the exact sentiments at the sentencing hearing *at any time*. In *Lenhert*, *Brown*, and *Goforth*, Crim.R. 36 was unavailable to each of the trial courts because the proper oral notification was never made. In Yauger's case, the trial court was empowered to issue a nunc pro tunc entry corresponding to the

oral notification that Yauger received twice. The trial court in the instant matter did not, but failure to do so is not error because there is no requirement, pursuant to *Brooks*, that notification also occur at the journalization stage.

{¶ 20} Based on the foregoing, the trial court did not err in notifying Yauger of his potential prison time at the sentencing hearing and, therefore, did not err in imposing the prison time for the community-control sanctions violation.

{¶ 21} Yauger's first assignment of error is overruled.

## B. Consecutive Sentences

{¶ 22} In his second assignment of error, Yauger argues that the trial court erred in imposing the sentence for the community-control violations consecutively.

{¶ 23} R.C. 2929.14(C)(4) permits courts to impose consecutive sentences if the court finds that consecutive sentences are (1) necessary to protect the public from future crime or to punish the offender; (2) not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public; and (3) one or more of the following findings are satisfied:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

*State v. Bartlett*, 8th Dist. Cuyahoga No. 100769, 2014-Ohio-4379, ¶ 3; R.C. 2929.14(C)(4).

{¶ 24} In imposing consecutive sentences, the court detailed:

I find that it is necessary to protect the public and punish you. You stole $22,900 from one family, $8,600 from another family, an incredible amount of money, incredible amount of loss to those victims.

And it's not just disproportion — the sentence is not disproportionate to what you did and because the harm is so great or unusual a single term for these F4s is not adequate to reflect the seriousness of your conduct and your criminal history where you have had specifically[,] prior convictions in retail theft in Pennsylvania, domestic violence in Niles and after [being] put on probation here[,] F3 theft in Lorain County.

And so you just — you can't comply with probation. You — the only reason the State gave you an opportunity for probation was to pay the restitution. That was the deal. You reneged. So I'm incarcerating you in prison.

(Tr. 54-55.)

{¶ 25} Yauger appears to dispute the proportionality findings that the trial court made. He argues that the trial court was aware that he could not make restitution due to the collapse of his business; that he is owed money by a former employer; and that his wife has cancer which impedes her ability to properly care for their family, but yet still sentenced him to 36 months following a community-control violation.

{¶ 26} We understand and empathize with Yauger's arguments, but the court made the requisite findings pursuant to R.C. 2929.14(C)(4). Plainly, the court

considered protection of the public, punishment to the defendant, and proportionality, and found, pursuant to R.C. 2929.14(C)(4)(a) and (c), that Yauger picked up other charges while under community-control sanctions in this case and that Yauger's criminal record indicates that previous punishments have not deterred his criminal conduct. All of these findings are supported by the record before us, particularly the proportionality finding that Yauger disputes, since Yauger deprived two families of substantial amounts of money. It is also persuasive that the court worked to set a payment plan that Yauger himself consented to and acknowledged that he could likely keep up with based on his other cases and the other victims to whom he owed money, but Yauger failed to maintain the plan.

{¶ 27} As a result of the foregoing, we overrule Yauger's second assignment of error.

### C. Nature of Community-Control Violation

{¶ 28} In his final assignment of error, Yauger argues that his failure to pay restitution should be considered a technical violation of his community-control sanctions.

{¶ 29} Yauger argues that pursuant to R.C. 2929.15(B)(1)(c)(ii), he could not be imprisoned for more than 180 days on a fourth-degree felony if the community-control violation is technical in nature.

{¶ 30} The Ohio Supreme Court has stated that whether a community-control violation amounts to a "technical violation" as it is used in R.C. 2929.15(B)(1)(c)(ii), requires the trial court to engage in a practical assessment to

determine whether the violation was technical or nontechnical. *State v. Nelson*, 162 Ohio St.3d 338, 2020-Ohio-3690, 165 N.E.3d 1110, ¶ 26. A violation is "technical" when "the condition violated is akin to 'an administrative requirement facilitating community control supervision.'" *Id.,* quoting *State v. Davis*, 12th Dist. Warren No. CA2017-11-156, 2018-Ohio-2672, ¶ 18. A violation is "nontechnical" if, under the totality of the circumstances, "the violation concerns a condition of community control that was 'specifically tailored to address' matters related to defendant's misconduct or if it can be deemed a 'substantive rehabilitative requirement which addressed a significant factor contributing to' the defendant's misconduct." *Id.,* citing *Davis* at ¶ 17, 18. No single factor determines whether a violation is technical or nontechnical, which allows the trial court to consider "the nature of the community-control condition at issue and the manner in which it was violated, as well as any other relevant circumstances in the case." *Id.*

{¶ 31} Based on the specific facts of this case, we find that Yauger's failure to pay restitution was a nontechnical violation of his community control. Plainly, the trial court demonstrated extreme concern for the families that were deprived of such substantial amounts of money and specifically tailored the restitution payments to address its concerns related to the families who suffered from Yauger's conduct. We also note that requiring restitution was rehabilitative; it is clear that the trial court desired that Yauger actually remedy his criminal conduct — not merely to accept the charges and complete a prison sentence without any meaningful attempts to pay back the victims.

**{¶ 32}** As a result of the foregoing, we overrule Yauger's final assignment of error.

### III. Conclusion

**{¶ 33}** We overrule all of Yauger's assignments of error. The trial court did not err in imposing a prison sentence as a result of Yauger's failure to comply with community-control sanctions.

**{¶ 34}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

FRANK DANIEL CELEBREZZE, III, PRESIDING JUDGE

MICHELLE J. SHEEHAN, J., CONCURS;
MICHAEL JOHN RYAN, J., CONCURS IN PART AND DISSENTS IN PART (WITH SEPARATE OPINION)


MICHAEL JOHN RYAN, J., CONCURRING AND DISSENTING:

**{¶ 35}** Respectfully, I dissent as to the majority's resolution of the first and second assignments of error. I concur as to its resolution of the third assignment of error.

{¶ 36} In regard to the first assignment of error, it is true that, at the original sentencing hearing, the trial court informed Yauger that a violation of the conditions of his community-control sanctions would result in the imposition of a prison term of 18 months on each count, to be served consecutively. This court has held that the notification must also be contained in the court's sentencing entry. *See, e.g., State v. Lenhart*, 8th Dist. Cuyahoga No. 108938, 2020-Ohio-2727, ¶ 14; *State v. Brown*, 8th Dist. Cuyahoga Nos. 105211 and 106278, 2018-Ohio-88, ¶ 9; and *State v. Goforth*, 8th Dist. Cuyahoga No. 90653, 2008-Ohio-5596, ¶ 20.

{¶ 37} The sentencing entry for Case No. CR-21-659406 states that a violation of the terms of community control "may result in more restrictive sanctions, or a prison term of 18 months as approved by law." However, the sentencing entry for Case No. CR-20-654499 is silent on the consequences for a violation of the community-control sanctions.

{¶ 38} Yauger cites *State v. Sheffield*, 8th Dist. Cuyahoga No. 95434, 2011-Ohio-2395, in support of his contention that the trial court improperly sentenced him for the violation in Case No. CR-20-654499. In *Sheffield*, the trial court advised the defendant *at sentencing* as to the consequences of violating his community-control sanctions as follows: "You have four F3's. Five years on each F3. Eighteen months on 15 F4's. You have two F5's, 12 months for each of those. I'll run them consecutive." *Id.* at ¶ 3, 19. However, the court's sentencing entry stated that a "[v]iolation of the terms and conditions may result in more restrictive sanctions, or

a prison term of 5 years as approved by law.  (5 years each F-3, 18 months each F-4 and 12 months each F-5, counts to run concurrent to each other)." *Id.* at ¶ 5.

{¶ 39} The defendant violated the terms of his community-control sanctions and after a hearing the trial court sentenced him to an eight-year prison term. Approximately one month after sentencing the defendant, the trial court issued a nunc pro tunc entry relative to the original judgment of conviction stating that a "violation of the terms and conditions may result in more restrictive sanctions, or a prison term of 44 years, 6 months as approved by law.  (Counts to run consecutive to each other)." *Id.* at ¶ 8.

{¶ 40} On appeal, one of the defendant's challenges was that the trial court's eight-year sentence was invalid because the original judgment of conviction stated that he was subject to a five-year prison term for a violation of his community-control sanctions and the trial court impermissibly issued a nunc pro tunc entry after it had already revoked his probation and imposed the eight-year sentence.  This court agreed.

{¶ 41} This court, relying on *State v. Brooks*, 103 Ohio St.3d 134, 2004-Ohio-4746, 814 N.E.2d 837, noted that the purpose of the notification is to make a defendant aware of the specific prison term he or she will face before a violation of his or her community-control sanctions.  *Sheffield*, 8th Dist. Cuyahoga No. 95434, 2011-Ohio-2395, at ¶ 23, citing *Brooks* at ¶ 33.  Because a trial court speaks through its journal entries, this court found that the court gave the defendant notice that he

would be subject to a five-year prison sentence for a violation of his community-control sanctions. *Sheffield* at *id.*

{¶ 42} This court further found that the trial court's nunc pro tunc entry, issued after it had already revoked the defendant's community-control sanctions and sentenced him to an eight-year prison sentence, was improper. *Id.* at ¶ 24.

> This kind of "after-the-fact" notification "totally frustrate[s]" the purpose of R.C. 2929.19(B)([4]), which as noted, is to provide notice to the offender before a violation of the specific prison term he [or she] could face for a violation. *Id.* Here, Sheffield had notice that if he violated community control, he could receive five years in prison. Accordingly, we hold that the trial court's attempt to exceed the five-year maximum prison term by altering its journal entry after it had sentenced Sheffield to eight years in prison contradicts *Brooks* and violates principles of due process.

*Id.*; *see also State v. Puttick*, 5th Dist. Morrow No. 12CA0012, 2013-Ohio-3295 (following *Sheffield*).

{¶ 43} To remedy the error, this court remanded the case to the trial court "for resentencing with instructions that the maximum prison term that may be imposed is five years." *Sheffield* at ¶ 25.

{¶ 44} The majority finds *Sheffield* distinguishable from the instant case stating, "there are no concerns that Yauger was notified of his sentence after the sentence was imposed, as was the concern in *Sheffield*." The majority relies on the advisements the trial court gave to Yauger at his original sentencing hearing and first violation hearing as to what the consequences of violating community control could be. But the defendant in *Sheffield* also received an advisement as to the consequences of a violation of community control at his sentencing hearing. Thus,

the only distinction I find between *Sheffield* and this case is that the sentencing judgment entry in *Sheffield* advised the defendant of a prison term different from what the trial court advised him at his original sentencing hearing, as compared to here, where the sentencing judgment failed to advise Yauger at all of the consequences for violating his community-control sanctions. Both defendants were notified at their sentencing hearings of what sentence the trial court intended to impose for a violation of their community-control sanctions.

{¶ 45} To the extent that the majority's position is based on the ground that the trial court in *Sheffield* never informed the defendant of the specific prison term he would be facing for a violation of his community-control sanctions, I do not believe that is a distinguishing factor. This court specifically found that

> [a]lthough it would have been better if the judge had added up the number of years for Sheffield, it is apparent that he told him the definite sentence he would receive for each count in the event of a violation, i.e., the judge told him he would receive the maximum prison term for each offense if he violated community control. We find the trial court's advisement to constitute a "specific" term as required by R.C. 2929.19(B)([4]).

*Id*., 8th Dist. Cuyahoga No. 95434, 2011-Ohio-2395, at ¶ 19.

{¶ 46} Thus, in my opinion, *Sheffield* is not distinguishable from this case as it relates to the trial courts' advisements; Yauger and the defendant in *Sheffield* were on equal ground in that regard. Simply, in both cases, the defendants were informed at their original sentencing hearing of a specific prison term that would be imposed if they violated the terms of their community-control sanctions. In *Sheffield*, the trial court's sentencing entry gave the defendant a term other than the one stated at

the sentencing hearing, and in this case, the sentencing hearing was silent on the consequences of a violation.

{¶ 47} This court has long-held that notification of the consequences of a violation of community-control sanctions should be made at the sentencing hearing *and* put in the sentencing judgment entry. The court has not treated the notification in the sentencing entry as superfluous; I would decline to do so now. As this court has explained,

> "[b]ased on the continuous goal of 'truth in sentencing,' a trial court must first notify a defendant at a sentencing hearing of the specific prison term that it will impose if he violates community control. Notification *must also* be contained in the accompanying sentencing journal entry." *State v. McWilliams*, Summit App. No. 22359, 2005-Ohio-2148. Accordingly, the trial court erred in imposing a term of imprisonment for the community control violation because the trial court failed to advise appellant in the judgment entry of the preceding sentencing hearing that she would be subject to a specific prison time if she violated community control sanctions.

(Emphasis added.) *Goforth*, 8th Dist. Cuyahoga No. 90653, 2008-Ohio-5596, at ¶ 20.

{¶ 48} Accordingly, I dissent as to the majority's resolution of the first assignment of error. I would find the second assignment of error regarding the consecutive sentence moot. *See* App.R. 12(A)(1)(c). I concur with the majority's resolution of the third assignment of error.