[Cite as *State v. Cihon*, 2023-Ohio-3108.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
GALLIA COUNTY

STATE OF OHIO,                    :

    Plaintiff-Appellee,          : CASE NO. 22CA13

    v.                           :

SHANE CIHON,                      : DECISION AND JUDGMENT ENTRY

    Defendant-Appellant.         :

_____

APPEARANCES:

Christopher Pagan, Middletown, Ohio, for appellant[1].

Jason Holdren, Gallia County Prosecuting Attorney, and Jeremy
Fisher, Assistant Gallia County Prosecuting Attorney, Gallipolis,
Ohio, for appellee.

_____
CRIMINAL APPEAL FROM COMMON PLEAS COURT
DATE JOURNALIZED:8-28-23
ABELE, J.

{¶1} This is an appeal from a Gallia County Common Pleas Court
sentence imposed for a violation of community control. Shane
Cihon, defendant below and appellant herein, assigns three errors
for review:

        FIRST ASSIGNMENT OF ERROR:

        "THE TRIAL COURT'S CONSECUTIVE-SENTENCES
        FINDINGS AT THE SENTENCING AND REVOCATION

_____
    [1] Different counsel represented appellant during the trial
court proceedings.

GALLIA, 22CA13

HEARINGS WERE ERROR."

SECOND ASSIGNMENT OF ERROR:

"THE TRIAL COURT APPLIED A REPEALED STANDARD
FOR A NONTECHNICAL COMMUNITY-CONTROL VIOLATION.
UNDER THE NEW STANDARD, THE RECORD FAILS TO
SUPPORT A FINDING THAT CIHON'S DISCHARGE FROM
THE CBCF DEMONSTRATED HIS REFUSAL TO CONTINUE
WITH THE CBCF PROGRAM, HAVING ABANDONED IT.  SO
THE TRIAL COURT'S IMPOSITION OF A PRISON
SANCTION EXCEEDING 180-DAYS WAS CONTRARY TO
LAW, AN ABUSE OF DISCRETION, AND CLEARLY-AND-
CONVINCINGLY UNSUPPORTED BY THE RECORD ."

THIRD ASSIGNMENT OF ERROR:

"IT IS UNLAWFUL TO DENY APPELLATE COUNSEL A
COPY OF CIHON'S PSI TO INVESTIGATE, RESEARCH,
AND PRESENT ISSUES FOR APPEAL."

{¶2}  In November 2021, a Gallia County Grand Jury returned an indictment that charged appellant with (1) grand theft of a motor vehicle in violation of R.C. 2913.02(A)(1), a fourth-degree felony, and (2) vandalism in violation of R.C. 2909.05(B)(1)(a), a fifth-degree felony.  Appellant pleaded not guilty to both charges.

{¶3}  At the February 24, 2022 plea hearing, appellee recited the terms of the parties' plea agreement:

Mr. Cihon would enter pleas of guilty to Count 1 and Count 2.  Count 1 is grand theft of a motor vehicle, in violation of 2913.02(A)(1), a felony of the fourth degree due to the property involved.  Count 2 is vandalism in violation of 2909.05(B)(1)(A), felony of the fifth degree due to the value involved in the vandalism.  In return for those two pleas of guilty the joint recommendation at the time of sentencing is for a period of community control, 36 months.

> Also Mr. Cihon agrees to pay restitution in the amount of $4,614.50 to the victim * * *, that's from Count 1. Also he agrees to successfully complete the STAR program as a special condition of the community control and he agrees to pay the cost in the case.

{¶4} After appellant's counsel agreed with the plea agreement's terms, the trial court gave the necessary advisements and asked appellant, "So you and the State have presented to me an agreed recommendation for sentencing. You understand I do not have to accept that?" Appellant replied, "Yes ma'am." The court informed appellant that (1) on the grand theft charge, he "could receive prison of six, seven, eight, nine, 10, 11, 12, 13, 14, 15, 16, 17 or 18 months" and face fines of "up to $5,000," and (2) on the vandalism charge, he "could receive prison of six, seven, eight, nine, 10, 11 or 12 months" and a "fines of up to $2,500," and (3) the maximum would be 30 months. Appellant stated that he understood this information.

{¶5} At this point, appellant entered a guilty plea to both counts. Appellant acknowledged on his plea form that the maximum penalty for Count 1 is 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, or 18 months, the maximum penalty for Count 2 is 6, 7, 8, 9, 10, 11, or 12 months, and maximum fines of $5,000 and $2,500, respectively. The agreement stated:

> Prison terms for multiple charges, *even if consecutive*

*sentences are not mandatory, may be imposed consecutively by the Court.*

Court costs, restitution and other financial sanctions including fines, day fines, and reimbursement for the cost of any sanctions may also be imposed.

* * *

Community Control: If this Court is not required by law to impose a prison sanction, it may impose community control sanction or non-prison sanctions upon me. I understand that if I violate the terms or conditions of a community control sanction, the Court may extend the time for which I am subject to this sanction up to a maximum of 5 years, impose a more restrictive sanction, or imprison me for up to the maximum stated term allowed for the offenses as set out above.

I understand the nature of these charges and the possible defenses I might have. I am satisfied with my attorney's advice and competence. * * * No promises have been made except as part of this plea agreement stated entirely as follows:

Joint recommendation for 36 months community control and Defendant agrees to pay restitution in the amount of 4,614.50 to the victim * * *. Defendant to successfully complete the STAR program. Defendant agrees to pay costs in all cases.

* * *

I understand that the recommendation of the Prosecuting Attorney is not binding upon the Court and that the Court, and the Court alone, determines the appropriate sentence.

{¶6} At appellant's February 28, 2022 sentencing hearing, the trial court stated that (1) if the court ordered the sentences to be served consecutively, appellant faced up to 30 months in prison

and $7,500 in fines, and (2) in lieu of prison, the court could impose up to a five year community control sanction. The court also asked the state to recite the parties' agreement, and the state indicated the joint recommendation included: (1) 36 months community control, (2) successful completion of the STAR CBCF program, (3) $4,614.50 restitution to the victim, and (4) pay court costs. Defense counsel agreed that appellee accurately recited their agreement. The court then noted that it had reviewed the pre-sentence investigation report (PSI) and found "three prior prison terms served" under (D)(2), and under (D)(4) "a pattern of substance use and refusal or inability to remain in treatment." The court then accepted the parties' community control recommendation and imposed a 36-month sentence on each count, to be served "at one time for one 36 month period." The court also imposed a 180 day suspended jail sentence on each count. The court further specified that for (1) the fifth-degree felony, the court reserved six, seven, eight, nine, 10, 11, or 12 months, and (2) the fourth-degree felony, the court reserved six, seven, eight, nine, 10, 11, 12, 13, 14, 15, 16, 17 or 18 months "*consecutively by agreement but I'm also finding consecutive sentences are necessary to protect the public from future crime,*" and not disproportionate. (Emphasis added.)

{¶7} The trial court's sentencing entry provides that the court considered counsels' oral statements, appellant's oral statement, the victim's statement, the underlying agreement recited on the record, appellant's record, the PSI, and other relevant information. The court further noted appellant's "history of criminal convictions, having served three prior prison terms, [and] * * * exhibits a pattern of drug abuse related to the offense and a refusal to engage in treatment." The court concluded that the "agreed sentence complies with the statutory mandates as to sentencing and accepts the sentence." Consequently, the court sentenced appellant to serve 36 months community control for each count, to be served concurrently with each other. The court stated:

> Defendant was informed that if Defendant violates any of the terms of community control, violates any law or leaves the state without permission of the probation officer, such violation may result in imposition of a reserved prison term on each count from the range of prison terms for the offense: six to twelve months for the underlying fifth degree felony; and six to eighteen months for the underlying fourth degree felony.

The court further ordered the sentences to "*be served consecutively to each other," and stated that consecutive sentences "are agreed upon by the parties.*" (Emphasis added.) Specific terms of probation included: (1) successfully complete a community-based

GALLIA, 22CA13

correctional facility (CBCF) program; (2) after release from the CBCF, successfully complete transitional living; (3) intensive supervision reporting; (4) participate in  substance abuse and mental health evaluation and treatment, including Medication Assisted Treatment if appropriate; (5) complete moral recognition training; (6) comply with 60 days of substance abuse monitoring (SAM); and (7) serve 180 days of jail on each count (commitment deferred until the court determines it necessary).  The court also advised appellant that, if he violates community control and is sentenced to prison, after his release the APA may place him on post-release control up to two years.  The court further explained the consequences of a post-release control violation.

{¶8}  On June 7, 2022, appellee moved to revoke appellant's community control because of appellant's involvement in a verbal and physical altercation with a CBCF resident, "a major rule violation of physical aggression and STAR determined that defendant was not amenable to treatment at this time.  The defendant was unsuccessfully discharged from STAR Community Justice Center on June 6, 2022."

{¶9}  At the June 9, 2022 hearing, appellant waived the reading of his alleged community control violation, the notice period, and his rights and penalties.  Appellant also denied the alleged

violation. At the July 25, 2022 hearing, the trial court observed that the state claimed that appellant had been "unsuccessfully discharged from STAR [the CBCF]." The court reminded appellant of his sentence and indicated "if I choose to impose maximum prison consecutively, one after another, you're facing 30 months" and, in the alternative, "we could extend the period of your community control up to the full five years, impose more restrictive sanctions including local jail time, lockdown in-patient rehab or another residential sanctions uh, including the CBCF." Appellant indicated to the court that he understood the potential sanctions, and further indicated he understood the post-release control term and consequences for a violation. After appellant admitted to the community control violations, the court's entry states:

> The Defendant previously entered a guilty plea to Count One, "*Grand Theft (MV)*," a violation of Section 2913.02(A)/(1)(B)(5) of the Ohio Revised Code, a felony of the fourth degree; and Count Two, "*Vandalism*," a violation of Section 2909.05(B)(1)(a) of the Ohio Revised Code, a felony of the fifth degree.
>
> The Court further finds that the Defendant was placed on community control for a period of thirty-six (36) months on each count on February 28, 2022. Defendant was specifically notified that a violation of community control would result in imprisonment for six to eighteen (6-18) months on Count One; and six to twelve (6-12) months on Count Two.
>
> The Court further finds that the Defendant has violated

the terms of the community control sanction order by 1) failed to successfully complete CBCF program.

* * *

The Defendant was specifically advised that although the Court accepted the guilty plea, the Court is not under any obligation to accept the plea agreement as to penalty and same is reserved pending the pre-sentence investigation report.

**{¶10}** At the August 15, 2022, sentencing hearing, the trial court further determined that appellant's CBCF discharge was "nontechnical." After the court noted appellant's history of criminal convictions, less than favorable response to previous sanctions, pattern of drug abuse, and refusal to engage in treatment, the court revoked appellant's community control sentence and ordered him to serve an 18-month prison term on Count 1 and a 12-month prison term on Count 2, to be served consecutively for a term of 30 months. This appeal followed.

I.

**{¶11}** In his first assignment of error, appellant asserts that the trial court's consecutive sentence findings at his sentencing and revocation hearings constitute reversible error.[2] In

---

[2] A trial court may make consecutive-sentencing findings using a preponderance of the evidence standard, a more likely than not standard. However, pursuant to R.C. 2953.08(G)(2), an appellate

GALLIA, 22CA13

particular, appellant argues that the parties' plea agreement is silent about consecutive sentences and the court's alternative holding, made at the sentencing hearing, that consecutive sentences were necessary for any future violation, conflicts with its simultaneous holding that appellant would be amenable to community control.

{¶12} Appellant contends that the trial court should not make consecutive-sentencing findings at a sentencing hearing when the court ultimately imposed a community control sanction. In support, appellant cites *State v. Howard,* 162 Ohio St.3d 314, 2020-Ohio-314, 165 N.E.3d 1088, ¶ 23-28 for the proposition that a defendant is not required to challenge on direct appeal the lack of consecutive-sentencing findings and that a trial court must make consecutive-sentencing findings when it revokes community control. *Id.* at ¶ 25.

{¶13} This court has previously held that "a trial court is not

_____

court may reverse or modify a trial court's consecutive sentence if it clearly and convincingly finds that the record does not support the findings. *State v. Gwynne,* __ Ohio St.3d. __, 2022-Ohio-4607. The supreme court instructed that the first core requirement is there be some evidentiary support in the record for the consecutive-sentence findings that the trial court made. The second requirement is that "whatever evidentiary basis there is, that it be adequate to fully support the trial court's consecutive-sentence findings." We include more detailed discussion of *Gwynne* in Section IV of this opinion.

prohibited, per se, from sentencing an offender to concurrent terms of community control but consecutive prison terms as a possible punishment for violating those community control sanctions." *State v. Marcum,* 4th Dist. Hocking No. 19CA7, 2020-Ohio-3962, ¶ 10, citing *State v. Dusek*, 4th Dist. Hocking No. 18CA18, 2019-Ohio-3477, ¶ 4. Moreover, the Supreme Court of Ohio held in *State v. Jones*, __ Ohio St.3d __, 2022-Ohio-4485, __ N.E.3d __, that "when a court revokes community control, it may require that the reserved prison term be served consecutively to any other sentence then existing or then being imposed but only if at the time it imposed community control, it notified the offender that a consecutive sentence on revocation of community control was a possibility." *Id.* at ¶ 2.

{¶14} In the case sub judice, at appellant's original sentencing the trial court considered the R.C. 2929.11 principles and purposes of sentencing and the R.C. 2929.12 seriousness and recidivism factors and sentenced appellant to serve two 36-month terms of community control, to be served concurrently with each other. The court further informed appellant that, if he violated community control, violated any law, or left the state without permission, such violation "may result in imposition of a reserved prison term on each from the range of prison terms for the offense:

six to twelve months for the underlying fifth degree felony; and six to eighteen months for the underlying fourth degree felony. Ohio Revised Code Section 2929.19(B)(4). The sentence in this case shall be served *consecutively to each other."* The court made the required consecutive sentencing findings under R.C. 2929.14(C) and found:

> Consecutive sentences are agreed upon by the parties and are necessary to protect the public from future crime and to punish the offender. Consecutive sentences are not disproportionate to the seriousness of the offender's conduct nor are they disproportionate to the danger the offender poses to the public. Further the Defendant's history of criminal conduct demonstrates the necessity of consecutive sentences to protect the public from future crime. Ohio Revised Code Section 2929.14(C).

{¶15} Thus, at the original sentencing hearing the trial court made the consecutive-sentencing findings before it imposed two concurrent community control terms. At the revocation hearing, the trial court considered appellant's physical altercation at the CBCF, reviewed the R.C. 2929.11 and 2929.12 principles and factors, and again made the consecutive-sentence findings. Thus, we find no abuse of discretion in the trial court's decision to revoke appellant's community control. The record also clearly and convincingly supports the trial court's consecutive sentencing findings.

**{¶16}** Appellant also contends that his plea agreement is contractual. However, sentencing recommendations do not bind a trial court. *State v. Underwood,* 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, ¶ 28 (court may reject a plea agreement and not bound by jointly-recommended sentence). Although the trial court may have misspoken in stating that the consecutive sentence is an agreed sentence, the court did, in fact, make the required findings to impose consecutive sentences at both the original sentencing hearing and again at the revocation hearing. While appellant argues that prison should be discouraged for fourth and fifth-degree felony offenders and that appellant had "showed commitment and rehabilitation," we agree with the trial court's conclusion that appellant's violent acts and unsuccessful discharge from the CBCF program violated the terms of his community control.

**{¶17}** Accordingly, based upon the foregoing reasons, we overrule appellant's first assignment of error.

## II.

**{¶18}** In his second assignment of error, appellant asserts that the trial court applied an outdated standard to determine what constitutes a "technical" or "nontechnical" community control violation. Appellant contends that under the new statutory

standard, the record in the case sub judice fails to support a finding that appellant's discharge from the CBCF demonstrated his refusal to continue with the CBCF program. Therefore, appellant argues that the trial court's imposition of a prison sanction that exceeds 180 days is contrary to law, constitutes an abuse of discretion, and the record does not clearly and convincingly support the sanction.

{¶19} Generally, appellate courts review trial court decisions to revoke community control sanctions under the abuse of discretion standard of review. *State v. Crose*, 3d Dist. Crawford No. 3-22-34, 2023-Ohio-880, ¶ 8; *State v. Mehl*, 4th Dist. Athens No. 20CA14, 2022-Ohio-1154, ¶ 7. An abuse of discretion suggests that a decision is unreasonable, arbitrary, or unconscionable. *State v. Adams,* 62 Ohio St.2d 151, 157-158, 404 N.E.2d 144 (1980).

{¶20} *Mehl* acknowledged this court's two-part standard in community control revocation cases. First, we review the record to determine "whether there is substantial evidence to support the court's finding that [the offender] violated the terms of * * * community control." *Mehl* at ¶ 7, citing *In the Matter of C.M.C.,* 4th Dist. Washington No. 09CA15, 2009-Ohio-4223, ¶ 17. If substantial evidence exists, "we review the court's ultimate

decision to revoke * * * under the more deferential abuse of discretion standard." *Id.*

> [A] trial court's decision to revoke community control is reviewed for an abuse of discretion, and in making its determination, a trial court can take into consideration the nature of the community control violation at issue, the manner in which the condition was violated, as well as any other relevant circumstances in the case. Further, trial courts are granted much greater latitude and discretion in their decision making when the violation is one of substance rather than form. Additionally, when a trial court determines that community control should be revoked and a prison term should be imposed, a trial court must consider both the seriousness of the original offense leading to the imposition of community control as well as the gravity of the community control violation. Finally, in imposing a prison sentence for a violation of community control, trial courts should consider the principles and purposes of felony sentences, should balance the seriousness and recidivism factors found in R.C. 2929.11 and R.C. 2929.12, and then should impose a prison term within the statutory range for the underlying offense, which the defendant was advised during his or her initial sentencing hearing.

*Mehl* at ¶ 18.

**{¶21}** Previously, the Supreme Court of Ohio defined "nontechnical community-control violation" in *State v. Nelson,* 162 Ohio St.3d 338, 2020-Ohio-3690, 165 N.E.3d 1110, ¶ 26. The court observed that the term "technical violation" is not defined in the statute, and distinguished between whether a rule is "specifically tailored to address" the defendant's misconduct, or whether a rule is a "mere administrative requirement facilitating community control supervision." *Id.* at ¶ 33. In particular, the court held

that a violation of a community-control sanction is nontechnical if, considering the totality of the circumstances, the violation concerns a condition of community control "specifically tailored to address" matters related to the defendant's misconduct or if it can be deemed a "substantive rehabilitative requirement which addressed a significant factor contributing to" the defendant's misconduct. *Id.* at ¶ 26, citing *State v. Davis*, 12th Dist. Warren No. CA2017-11-156, 2018-Ohio-2672, ¶ 17-18. On the other hand, a violation is "technical" when the condition violated equates to "an administrative requirement facilitating community control supervision." *Nelson* at ¶ 26, citing *Davis* at ¶ 18.

{¶22} As appellant points out, after *Nelson* on April 12, 2021 the General Assembly amended R.C. 2929.15 to define the term "technical violation." R.C. 2929.15(E) provides:

> (E) As used in this section, "technical violation" means a violation of the conditions of a community control sanction imposed for a felony of the fifth degree, or for a felony of the fourth degree *that is not an offense of violence* and is not a sexually oriented offense, and to which neither of the following applies:
>
> (1) The violation consists of a new criminal offense that is a felony or that is a misdemeanor other than a minor misdemeanor, and the violation is committed while under the community control sanction.
>
> (2) The violation consists of or includes the offender's articulated or demonstrated refusal to participate in the community control sanction imposed on the offender or any of its conditions, and the refusal demonstrates to the court that the offender has abandoned the objects of the

community control sanction or condition.

(Emphasis added).

**{¶23}** In the case at bar, the CBCF discharged appellant due to his physical altercation with a fellow resident, an offense of violence, that during the revocation hearing he admitted to having committed. The trial court asked, "So you understand what the State says you've done to violate them?" Appellant replied, "Yes, ma'am." When asked if he agreed that the state would be able to prove a violation, appellant replied, "Yes ma'am." At sentencing, the court stated: "Mr. Cihon admitted to and was found in violation of the terms of community control * * * as set forth in the filing of June 7. Unsuccessful discharge at STAR because of harming another * * * resident."

**{¶24}** Thus, regardless of whether the R.C. 2929.15 amendments supersede the *Nelson* standard, we believe that appellant's community control violation constitutes a violent act that constitutes an act of violence, and does not fall under the definition of "technical violation." Consequently, under both the *Nelson* standard and amended R.C. 2929.15(E), appellant's violent act that led to his discharge from the CBCF constitutes a non-technical violation.

**{¶25}** Accordingly, we overrule appellant's second assignment of

error.

## III.

**{¶26}** In his final assignment of error, appellant asserts that denying appellate counsel a copy of appellant's pre-sentence investigation (PSI) report is unlawful. In particular, appellant contends that counsel's lack of access and ability to retain a copy of appellant's PSI hampers counsel's ability to investigate, research, and present issues for appeal, and instead is required to travel to view the PSI and make notes.

**{¶27}** Crim.R. 32.2 and R.C. 2951.03 address presentence investigation reports. Crim.R. 32.2 provides:

> Unless the defendant and the prosecutor in the case agree to waive the presentence investigation report, the court shall, in felony cases, order a presentence investigation and report before imposing community control sanctions or granting probation. The court may order a presentence investigation report notwithstanding the agreement to waive the report. In misdemeanor cases the court may order a presentence investigation before granting probation.

R.C. 2951.03(A)(1) provides, "No person who has been convicted of or pleaded guilty to a felony shall be placed under a community control sanction until a written presentence investigation report has been considered by the court." The report must address the circumstances of the offense; the criminal record, social history, and present condition of the defendant; and, possibly, the victims'

statements regarding the offense's impact. *Id.; State v. Johnson,* 138 Ohio St.3d 282, 2014-Ohio-770, 6 N.E.3d 38, ¶ 8.

**{¶28}** R.C. 2951.03 permits access to the PSI report in certain circumstances. R.C. 2951.03(B)(1) instructs that "the court, at a reasonable time before imposing sentence, shall permit the defendant or the defendant's counsel to read the report," with some exceptions. Further, as per R.C. 2951.03(B)(2), "[p]rior to sentencing, the court shall permit the defendant and the defendant's counsel to comment on the presentence investigation report and, in its discretion, may permit the defendant and the defendant's counsel to introduce testimony or other information that relates to any alleged factual inaccuracy contained in the report." In addition, R.C. 2951.03(D)(1) provides when a defendant and counsel may seek access to the presentence investigation report, which is otherwise "confidential information" and "not a public record:"

> The court, an appellate court, * * * the defendant, the defendant's counsel, the prosecutor who is handling the prosecution of the case against the defendant, * * * may inspect, receive copies of, retain copies of, and use a presentence investigation report * * * only for the purposes of or only as authorized by Criminal Rule 32.2 or this section, division (F)(1) of section 2953.08, section 2947.06, or another section of the Revised Code.

**{¶29}** Relevant to the case at bar, pursuant to R.C.

2951.03(D)(2) the defendant, his counsel, and the prosecutor may not make copies of the report. Instead, they must return all copies of the report to the court "[i]mmediately following the imposition of sentence upon the defendant," and per R.C. 2951.03(D)(3), the "court or other authorized holder of the report * * * shall retain the report * * * under seal," except when it is being used for specified purposes. R.C. 2951.03(D)(2) and (3); *Johnson* at ¶ 11.

{¶30} In *Johnson,* the Supreme Court of Ohio held that newly appointed appellate counsel may access a presentence investigation report upon a proper showing, subject to similar restrictions as in R.C. 2951.03 and 2953.08(F)(1), and any further directives of the appellate court. *Id.* at ¶ 14. Thus, appellate counsel is permitted access for appellant's first appeal as of right. *See also State v. Vasquez*, 9th Dist. Summit No. 29858, 2021-Ohio-3453 (access to PSI denied when defendant sought PSI for use in future petition for post-conviction relief, noting due process implications of *Johnson* not present). Moreover, R.C. 2951.03(D)(2) provides that, unless a presentence investigation report is being used for one of the permissible purposes listed in division (D)(1) of the statute, the report must be kept under seal.

{¶31} While we understand that this procedure appellant

outlines could indeed create a hardship for appellant's counsel, as an intermediate appellate court we may not depart from Supreme Court of Ohio directives and statutory requirements. Therefore, we overrule appellant's third assignment of error.

IV.

{¶32} Additionally, in his reply brief appellant cites the recent Supreme Court of Ohio decision, issued after appellant submitted his merit brief, that expanded appellate review and sentencing determinations of consecutive sentences. In *State v. Gwynne*, __ Ohio St.3d. __, 2022-Ohio-4607, the court created a de novo review process for appellate courts at ¶ 2:

> We hold that based on the language of R.C. 2929.14(C)(4), the consecutive-sentence findings are not simply threshold findings that, once made, permit any amount of consecutively stacked individual sentences. Rather, these findings must be made in consideration of the aggregate term to be imposed. Additionally, we hold that appellate review of consecutive sentences under R.C. 2953.08(G)(2) does not require appellate courts to defer to the sentencing court's findings in any manner. Instead, the plain language of the statute requires appellate courts to review the record de novo and decide whether the record clearly and convincingly does not support the consecutive-sentence findings.

Thus, appellate courts are now apparently tasked to consider, independently of a trial court's determination, whether the record

clearly and convincingly supports the imposition of an aggregate sentence that is necessary, proportionate and arises from sufficiently aggravated circumstances to overcome the statutory presumption for the imposition of concurrent sentences. R.C. 2929.41(A) and R.C. 2929.14(C)(4).

{¶33} In the case sub judice, after our review we believe that the record supports the trial court's necessity and proportionality findings and, after our de novo review, we believe the record clearly and convincingly supports the consecutive sentence findings. Here, appellant's history of criminal convictions, pattern of drug abuse, apparent unwillingness or inability to engage in, and comply with, drug treatment programs and refrain from committing a major rule violation (act of violence) at a treatment facility demonstrates that the 30-month aggregate consecutive sentence is warranted.

{¶34} Accordingly, based upon the foregoing reasons, we affirm the trial court's judgment.

JUDGMENT AFFIRMED.

JUDGMENT ENTRY

It is ordered that the judgment be affirmed and that appellee recover of appellant the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Gallia County Common Pleas Court to carry this judgment into execution.

If a stay of execution of sentence and release upon bail has been previously granted by the trial court or this court, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted. The purpose of a continued stay is to allow appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of the proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Hess, J. & Wilkin, J.: Concur in Judgment & Opinion

For the Court

BY:_____
                                    Peter B. Abele, Judge

NOTICE TO COUNSEL
Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.